JOSEPH F. GEORGIA, JOSEPH SCOTT, THORNTON SMITH AND ROBERT JANISZEWSKI, PLAINTIFFS, v. WILLIAM A. SURUDA, BEATRICE BAILY, REV. VICTOR R. YANITELLI AND DOMINICK J. PUGLIESE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 14, 1977.

*Mr. Seymour Margulies* for plaintiffs (*Messrs. Brigadier & Margulies,* attorneys).

*Mr. Eric Summerville* for defendants (*Messrs. Summerville, Radding & Campbell,* attorneys).

CALISSI, J. S. C. The Board of Education of Jersey City consists of nine members. Presently there are 12. This anomaly results from the fact that both outgoing Mayor Paul T. Jordan and newly elected Mayor Thomas X. Smith have each appointed three members to the school board to fill the same three vacancies.

Plaintiffs seek to have themselves declared the lawful members of the school board, and to oust defendants from their positions as members. They contend that the appointments of all defendants are in violation of *N. J. S. A.* 40:69A–208 and *N. J. S. A.* 40A:9–156. The pertinent provisions of those statutes provide respectively as follows:

*N. J. S. A.* 40:69A–208.

(a) No subordinate board, department, body, office, position or employment shall be created and no appointments shall be made to any subordinate board, department or body, or to any office, employment or position, including without limitation patrolmen and firemen, between the date of election of officers and the date the newly elected officers take office under any optional plan.

*N. J. S. A.* 40A:9–156

\* \* \* \* No appointment of any officer shall be made by the mayor or other chief executive officer or by the governing body of any municipality where the term of the office is to commence after the expiration of the term of the officer making the appointment or of any member of the governing body.

Defendants counter by arguing that *N. J. S. A.* 40:69A–208 is inapplicable to the facts of this case and that *N. J. S. A.* 18A:12–8 mandates that appointment of members of the board of education in first-class cities shall be made in June with their terms to commence July 1. That statute provides:

In districts, other than those in cities of the first class, the members of the board shall be appointed between January 2 and January 15 and their terms of office shall begin on February 1, next succeeding, and *in districts in cities of the first class they shall be appointed during the month of June and their terms of office shall begin on July 1, next succeeding.* [Emphasis supplied]

Defendants also contend that *N. J. S. A.* 40A:9–156 does not apply to the appointment of members of the board of education, and even if it were assumed that the statute applied, the appointments of Suruda and Baily were not prospective, and therefore not violative of that provision.

The appointment of Pugliese involves factual issues varying from those involved in the appointments of Suruda and Baily, and will therefore be considered separately. (Rev. Yanitelli resigned following the commencement of this action).

The parties have filed cross-motions for summary judgment.

The relevant facts are not in dispute. Jersey City is a Type I School District[1] with a board of education consisting of 9 members[2] appointed by the mayor[3]. In first-class cities members are appointed during the month of June and their term of office commences on July 1.[4]

On June 28, 1977, at a regular meeting of the board of education, Wellington Davis, a member of the board, announced his intention to resign. Following the meeting he proceeded to the mayor's office where a letter of resignation effective June 28, 1977 was prepared by the mayor's secretary, signed by Davis and submitted to then Mayor Jordan. The following day the mayor appointed defendant Pugliese to the vacancy created by Davis' resignation. On the same day Pugliese submitted a letter to the city clerk, of resignation from his position on the municipal council, effective June 29, 1977 at the close of the business day. Pugliese took the oath of office as a school board member after 4 p.m. on June 29, 1977.[5]

On June 28, 1977 Mayor Jordan appointed defendants Suruda, Baily and Rev. Yanitelli to the board of education, for a term of three years, to commence July 1, 1977 and end June 30, 1980.

Mayor Jordan did not seek re-election, and in the May 10, 1977 mayoralty election Mayor Smith was elected. He took the oath of office July 1, 1977. On that date the new mayor appointed plaintiffs to the office of member of the board of education for a term beginning July 1, 1977 and ending June 30, 1980.

 Plaintiffs have questioned the effectiveness of the resignations of Davis and Pugliese, *N. J. S. A.* 40A:9-11

---

[1] *N. J. S. A.* 18A:9-2

[2] *N. J. S. A.* 18A:12-6

[3] *N. J. S. A.* 18A:12-7

[4] *N. J. S. A.* 18A:12-8

[5] A letter from the board of education secretary to the effect that Pugliese was sworn in at 3:30 p.m. on July 29 was obviously in-

states that a vacancy arises when the resignation of an officer is accepted by the proper authority.[6] In this case the proper authority was Mayor Jordan, the officer authorized to fill the vacancy. *State ex rel. Kuberski v. Haussermann,* 113 *N. J. L.* 162 (Sup. Ct. 1934). As the affidavits indicate, this was done, and therefore Davis' resignation was effective at 4 P.M. on June 28. Regarding Pugliese's resignation from the city council, *N. J. S. A.* 40:45B-6 governs the means of resigning from governing bodies.[7] Subsection (b) states that one way is to file a written resignation with the municipal clerk. As Pugliese's affidavit indicates, this was done on June 29. This sequence of events shows that Davis duly resigned from the board of education, creating a vacancy

---

correct as evidenced by affidavits of three persons regarding the time and date when Pugliese took the oath of office and the affidavit of the secretary acknowledging such error. Plaintiffs submitted no counter-affidavits.

[6] *N. J. S. A.* 40A:9–11:
Whenever a county or municipal officer, other than a member of the governing body of a municipality, who is required to be a resident shall cease to be a bona fide resident of the county or municipality, as the case may be, *or whenever the resignation of any such officer shall have been accepted by the proper authority, his office shall immediately be deemed to be vacant * * *.*[Emphasis supplied]

[7] *N. J. S. A.* 40:45B–6:
The office of any member of the governing body of any municipality shall be deemed vacant under any of the following conditions:
(a) It shall be so declared by virtue of judicial determination;
(b) *A member's written resignation shall be filed with the municipal clerk;*
(c) A member shall refuse to qualify or to serve;
(d) A member shall become incapable of serving;
(e) A member shall have died;
(f) A member shall no longer reside within the corporate limits of the municipality;
(g) A member shall for a period of 8 consecutive weeks, without being excused by the majority of the members of the governing body, fail to attend and participate as a member of any of its meetings, or
(h) It comes within the purview of *R. S.* 19:3–25. [Emphasis supplied]

which was filled by Pugliese after he had effectively resigned from the municipal council. Plaintiffs' argument that the Pugliese appointment violated *N. J. S. A.* 40A:9-156 and that he held inconsistent offices simultaneously, is incorrect.

██ The fact that only one day remained in Mayor Jordan's term when Pugliese took office does not invalidate the appointment. In *Bakely v. Nowrey,* 68 *N. J. L.* 95 (Sup. Ct. 1902), aff'd 68 *N. J. L.* 732 (E. & A. 1903), the term of office of the mayor-elect of Camden began at 12 noon on January 1, 1902, at which time his predecessor's term expired. On that morning the incumbent mayor appointed two police officers to existing vacancies on the police force, and they were sworn in at 10:30 A.M. The new mayor removed the two police officers. After reviewing the facts the court ruled in favor of the two appointees of the incumbent mayor on the basis that "Any vacancy in office occurring from any cause, prior to twelve o'clock noon on January 1, 1902, and which vacancy the mayor could fill, the outgoing mayor of Camden had a right to fill." No case or statute has modified that principle. The *Bakely* case has recently been affirmed in *Thomas v. McGrath,* 145 *N. J. Super.* 288 (App. Div. 1976), where the court held that the fact that appointments were made in the waning hours of an official's term of office is irrelevant. Although it may have been made in the final days, Pugliese's appointment was not prospective within the meaning of *N. J. S. A.* 40A:9-156.

The appointments of Pugliese, Suruda and Baily to the Jersey City Board of Education raises an ostensible conflict of law between *N. J. S. A.* 40:69A-208(a) and *N. J. S. A.* 18A:12-8. The latter provision, as previously stated, requires that in cities of the first class members of the board of education shall be appointed during the month of June for terms to commence July 1. *N. J. S. A.* 40:69A-208(a) states that no appointments shall be made to any office between "the date of election of officers and the date the newly elected officers take office under any optional plan." By themselves, there is no necessary conflict between the two statutes.

If, for example, municipal officers are elected in November and take office in January, there is no conflict. Since Jersey City, however, has adopted Plan C of the Faulkner Act (*N. J. S. A.* 40:69A–1 *et seq.*), the mayor is elected in May and his term of office commences on July 1. In Type I school districts (like Jersey City) the mayor is also empowered to appoint the members of the board of education. Consequently, in election years or when the mayor is not a candidate for re-election or is defeated, the incumbent has the power to appoint members of the school board during the period between the election of officials and the time they take office. This has occurred here regarding all three defendants—Suruda, Baily and Pugliese—as all three were appointed during the month of June. The question before the court is whether *N. J. S. A.* 40:69A-208(a) works to invalidate the appointments. No case concerning that issue has been decided by our courts.

Except for the interpretation of § 208, *Downey v. Jersey City Bd. of Ed.*, 74 *N. J. Super.* 548 (App. Div. 1962), only tangentially touches on the main issue involved here. It concerned the appointment of members of the board of education between the time a new mayor was elected and the time he took office. During that period the municipality was also awaiting the effective date of a Faulkner Act form of government. It was held that *N. J. S. A.* 40:69A-208(a) worked to invalidate the appointments of the outgoing mayor. The decision was two-fold. First, the court found that even though *N. J. S. A.* 18A:12-8 is a specific statute, and *N. J.-S. A.* 40:69A-208 is general, § 208 controlled. The court stated that the intent of the Legislature in enacting § 208 was to give Faulkner Act communities a "new broom," and therefore to allow *N. J. S. A.* 18A:12-8 to control would subvert that purpose. The second part of the decision construed the words "any office" to include board of education members.

The crucial factual difference here is that the case at bar involves a change of administration and not the transi-

tion from a Walsh Act form of government to a new plan under the Optional Charter Act. The rationale of *Downey* was that the mayor was a holdover from a previous form of government and that *N. J. S. A.* 40:69A-208(a) prohibited appointments by officials who remained in office beyond their statutory term solely to effect an orderly change in government. The *Downey* decision should be strictly limited to its facts and should not apply to situations where only a change in administration is occurring. Section 208 is designed to meet the specific problems that arise during such transitional period.[8]

█ The next issue to be considered by the court is whether defendants' appointments violated *N. J. S. A.* 40A:9-156. At common law the well recognized rule was that an official empowered to appoint a public officer may not forestall the rights and obligations of his successor by making an appointment where the term of the appointee will not take effect until after the expiration of the term of the appointing officer. *Bownes v. Meehan,* 45 *N. J. L.* 189 (Sup. Ct. 1883); *Fitch v. Smith,* 57 *N. J. L.* 526 (Sup. Ct. 1895); *People ex rel. Sweet v. Ward,* 107 *Cal.* 236, 40 *P.* 538 (Sup. Ct. 1895); *People ex rel. Smith v. Kenyon,* 241 *App. Div.* 177, 271 *N. Y. S.* 939 (App. Div. 1934), aff'd without opinion, 265 *N. Y.* 537, 193 *N. E.* 209 (*Ct. App.* 1934). *N. J. S. A.* 40A:9-156 in essence is a restatement of that rule.

█ Defendants argue that board of education members are exempt from *N. J. S. A.* 40A:9-156. The court finds no evidence of any intent on the part of the Legislature to so exempt such officers from such an all-encompassing rule. This is so especially in communities where there is close relationship between the mayor and the board of education. The

---

[8]See Attorney General's Formal Opinion 1964, No. 4, which states that the provisions of § 208 apply only in the year of the effective date of a new form of government adopted pursuant to the Faulkner Act. The opinion relies on the fact that § 208 is included in Article 17 of the transitional section.

cases cited by defendants, *Wilensky v. Gurtman,* 13 *N. J.* 405 (1953), and *DeMuro v. Janeczek,* 4 *N. J. Super.* 266 (App. Div. 1949), deal with the clause of *N. J. S. A.* 40A: 9-156 that fixes the dates that municipal officers shall take office. That section reads:

Except as otherwise provided by law, the terms of office of all elective officers in any municipality shall commence at 12 o'clock noon on January 1 next succeeding their election and continue for the terms prescribed by law, except the term of office of the assessor shall commence on July 1 next following his election or appointment and continue for the prescribed number of years.

The terms of office of all officers appointed by the mayor or other chief executive officer or by the governing body of any municipality, except to fill vacancies, shall commence on January 1 of the year in which they are appointed and continue for the terms prescribed by law.

In the above cases cited by defendants the second paragraph of *N. J. S. A.* 40A:9-156 was found to be applicable only to municipalities that elect officers in November and take office in January. However, those cases do not deal with the third clause of *N. J. S. A.* 40A:9-156, set forth above, which is specifically at issue here.

Defendants argue that when a statute dictates that an appointment be made at a certain time, the appointment may be made regardless of whether it will violate the above rule, citing *State ex rel. Lueders v. Ermston,* 8 *Ohio C. Dec.* 83, 14 *Cir. Ct. R.* 614 (*Cir. Ct.* 1897), aff'd without opinion, 57 *Ohio St.* 665, 50 *N. E.* 1129 (*Sup. Ct.* 1897). The rationale is that when the outgoing official is mandated by statute to make the appointment, the common law rule is inapplicable. This argument was considered and rejected, however, in *State ex rel. Morris v. Sullivan,* 81 *Ohio St.* 79, 90 *N. E.* 146 (Sup. Ct. 1909). The determination of whether an exception exists turns on an analysis of legislative intent. "In the final analysis, the problem here is one of statutory construction, the cardinal rule of which is to ascertain the intent and purpose of the Legislature." *Bon-*

*tempo v. Carey,* 64 *N. J. Super.* 51, 61 (Law Div. 1960). The mere existence of a statute that states when appointments are to be made is not enough. In *Morris* the statute mandated that biennially a railroad commissioner be appointed by the Governor during January of each year for a six-year term to commence the first Monday in February. Defendant was appointed by the governor who took office on January 11. Plaintiff was appointed by the incumbent governor whose term expired January 11. The court determined that an act of the Legislature must be construed in light of the prevailing common law and the Legislature must clearly state its intention to overrule the common law, and held that the appointment by the outgoing governor was void, despite the existence of a statute mandating the time of appointments.

It is the overall objective which the Legislature wishes to achieve that determines how a conflict in statute will be resolved. There is no question that *N. J. S. A.* 18A:12-8 and the third paragraph of *N. J. S. A.* 40A:9-156 are in clear contradiction of each other.

██ It is a common principle of statutory construction that the common law is not derogated by a subsequent enactment of the Legislature unless the legislative intent is clear. In *State v. Struck,* 44 *N. J. Super.* 274, 277-278 (Cty. Ct. 1957), the court held that "It is axiomatic that such deep-rooted philosophies are not to be altered unless in the most explicit terms." Since the Legislature is assumed to know the common law when it enacts legislation, "A legislative body in this State is presumed to be familiar not only with the statutory law of the State, but also with the common law) (*Magierowski v. Buckley,* 39 *N. J. Super.* 534, 554 (App. Div. 1956), the common law is not derogated absent a specific declaration in the statute or a finding of implied intent to do so.

██ An examination of the legislative purpose in enacting *N. J. S. A.* 18A:12-8 does not indicate which provision the Legislature would want to control if it had considered the

problem. There is no expressed legislative intent as to which statute should take precedence in this unique situation. Therefore, the court must determine whether the Legislature intended that *N. J. S. A.* 40A:9-156 must, under the circumstances of this case, give way to *N. J. S. A.* 18A:12-8. The legislative history makes it clear that the reason for the amendment of *N. J. S. A.* 18A:12-8 to its present form is to avoid prior situations where new school board members took office February 1, during the critical period of the consideration and passage of a new school budget. There is nothing special about the July 1 date; the Legislature could just as easily have chosen June 15 or July 15 and still realized that objective. The reasoning behind *N. J. S. A.* 18A:12-8 indicates that the strong common law rule embodied in *N. J.- S. A.* 40A:9-156 was not meant to be abrogated, especially when a different date would have accomplished the statutory purpose equally as well.

Most cases in this area have been concerned with whether the appointments are in fact prospective, by considering when the appointing power terminated and when the term of the appointment commenced. Defendants argue that Mayor Smith's term did not begin until noon on July 1 and that their term commenced at 12:01 A.M. on July 1 by virtue of their having been sworn in advance. This argument is based upon *N. J. S. A.* 41:1-2, which states that the taking of an oath is a prerequisite to an official entering upon the execution of his office. Defendants conclude that since Mayor Smith was not sworn until noon on July 1, he did not become mayor until that time.

The right of a newly elected chief executive to make appointments should not depend on the exact hour he takes the oath of office. When the term of the mayor commences on July 1, but he does not take office until noon of that date, the outgoing mayor or other chief executive should not have the right to make appointments on the date of the beginning of the term of the newly elected mayor. To hold otherwise

would be a race to the swearing-in ceremonies at midnight to prevent last minute appointments by the predecessor mayor.

After having reviewed the pleadings, affidavits and briefs, and having heard the arguments of counsel, the court holds that defendant Dominick Pugliese was lawfully appointed as a member of the Board of Education of Jersey City to fill the unexpired term of Wellington Davis; that the reappointments of William Suruda and Beatrice Baily were in violation of *N. J. S. A.* 40A:9-156, and that Joseph Scott and Thornton Smith were duly appointed by Mayor Thomas X. Smith and are thereby the rightful holders of the office of member of the board of education. Judgment is therefore granted to defendant Dominick Pugliese and plaintiffs Joseph Scott and Thornton Smith accordingly.[9]

---

[9]Plaintiff Joseph Georgia was appointed to fill the Davis vacancy and Smith and Scott were appointed to the places occupied by Suruda and Baily. Robert Janiszewski has replaced Rev. Yanitelli, who has resigned since commencement of this action.